BARHAM, Justice
(dissenting).
The majority, having found that the word “across” in the disputed clause of the lease is ambiguous, has resorted to parol evidence to determine the intent of the parties. On this premise the majority has concluded that the new grocery store which the principal defendant must lease could, under the terms of the lease, be built partially on the property affected by the lease and partially on other property acquired by the plaintiff lessor after the confection of the lease. The pertinent provisions of the lease are: “ * * * Lessor may * * * during the term of this lease undertake to construct on the property shown on the plat of survey attached hereto and made a part hereof other commercial buildings. * * * the building that will be used for a grocery store will be located across the rear line of the property shown on the attached plat of survey * * *.”[1] (Emphasis supplied.)
The majority has correctly stated the law governing judicial interpretation of contracts, as follows:
“ ‘Article 1945 of the Civil Code provides that agreements have the effect of law upon-the parties, who alone can abrogate or modify them, and that the courts are bound to give effect to all contracts according to the true intent of the parties when the language is clear and leads to no absurd consequence. Conformable with this principle, which is also stated in Article 1901 of the Code, this Court has many times observed that it is not withfin] its province to alter or make new contracts for the parties, its-duty being confined to the interpretation: of the agreements the parties have made for themselves, and, in the absence of any ground for denying enforcement, to render them effective. * * * ” Also, the majority has given a comprehensive statement of definitions of the word “across”. I disagree, however, with the majority’s finding and conclusions. For two cogent reasons I do not believe the word “across” is ambiguous when it is considered, as it must be, in context with the entire lease agreement.
In the first place, the only property which was affected by the lease was the property outlined in blue on the plat of survey attached to the lease, and no other property was involved at the time the lease *192 was signed. If the lessor should elect to construct a new building for the lessee’s grocery store, that building was obviously intended to be located on the property shown on the plat. It is therefore apparent that the phrase “across the rear line of the property shown on the attached plat” can mean only “in front of and along the rear line of the property shown on the attached plat”[2]
In the second place, at the time the agreement was signed — and this is the time when the minds of the contracting parties met and formed their intent and their understanding as revealed by the terms of the document — , the lessor did not own the land to the rear of the property shown on the attached plat. Hence he could not have intended to contract in regard to this land which was neither owned by him nor under his control. Any intent which the lessor formed later, after he acquired the adjoining property, cannot be a factor in interpreting the lease. Moreover, the lessee could not have intended or contemplated that the lessor might erect a new building for the grocery- store on property other than that described in the lease. Thus the minds of the parties met in an intent that if a new building were constructed for the lessee, it would be wholly on the lessor’s property as described in the lease and shown on the attached plat, for of course they could not have intended that such a new building would straddle the rear line of the subject property and rest partly on the property of another.
Having reached the conclusion that the intent of the parties is clear, I see no reason to resort to a balancing of equities in order to resolve the controversy between them. I must reject the majority’s retrospective reformation of an unambiguous contract which abrogates the prerogative of the parties to contract and substitutes the majority’s idea of equity for the will and intent of equally able contracting parties. The lease, being clear and unambiguous, should be enforced as written.
I respectfully dissent.

. The property is described in the lease as: “That certain brick and wood building owned by Lessor and presently occupied by him as a grocery store, said building being located on the property of Lessor at the corner of Jackson Street and Texas Avenue in the City of Alexandria, and bearing Municipal No. 3306 Jackson Street, said building being located on the property shown in heavy blue lines on the attached plat of survey." (Emphasis supplied.)

. Any construction of this clause should stand the test of application under all circumstances which could arise in regard to it. The majority has concluded that “ * * * the contract * * * does not prohibit the construction of a new grocery store partially on the property owned by Giamaneo at the time of the execution of the lease and partially on ■ the property subsequently, acquired by him * * * Would the majority also conclude that the lease does not proMbit tbe construction of the store entirely on property acquired by tbe lessor after tbe lease? Moreover, would the majority allow the lessee to refuse to relocate in a new building wholly upon the property described in the lease and .indicated by the plat of survey if the Iessor had not later acquired the abutting property? It is obvious that the majority’s holding would lead to absurd consequences if the positions of the parties were reversed.